In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3667

United States of America,

Plaintiff-Appellee,

v.

Stephen Lee Galati,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 516--James B. Zagel, Judge.

Argued March 27, 2000--Decided August 29, 2000

Before Flaum, Chief Judge, Posner and Williams
Circuit Judges.

Williams, Circuit Judge.  Defendant-Appellant
Stephen Lee Galati was convicted of two counts of
bank robbery under 18 U.S.C. sec. 2113(a), for
committing two robberies within one week. He now
challenges his conviction using three separate
arguments concerning evidence and testimony
admitted at trial. First, Galati maintains that
there was insufficient evidence to support the
jury's guilty verdict. Second, he argues that the
district judge erred in denying his motion to
suppress the out-of-court identifications made by
two bank tellers because the photo array used was
unduly suggestive. Third, Galati contends that
the district court should have permitted his
defense counsel to impeach two of the
government's witnesses with evidence of their
prior convictions. Alternatively, he challenges
the district court's decision to sentence him as
a Career Criminal Offender under U.S.S.G. sec.
4B1.1. Because we find none of these arguments
persuasive, we affirm.

I.
   Following a brief investigation, on July 27,
1998, Galati was arrested and charged with
committing two separate bank robberies. One of
the robberies occurred on July 1, 1998 at LaSalle
Bank ("LaSalle robbery") and the other occurred
in the same week, on July 6, 1998 at a First

Chicago Bank, located within walking distance of the LaSalle Bank ("First Chicago robbery"). Galati used the same modus operandi for each robbery. He walked into the bank, obtained a savings withdrawal slip and wrote a note which read, "I have a gun, give me all of your money."/1 Galati then gave a bank teller the note and after reading it, the teller handed Galati money from the bank drawer. Afterwards, Galati took the money, retrieved his demand note and left the bank.

At trial, the government presented both direct and circumstantial evidence that pointed to Galati as the person who committed both the LaSalle and First Chicago robberies. Although neither bank teller made a positive identification of Galati in the courtroom during trial, both of them identified Galati when reviewing a photo line-up. Each teller described the robber as a white male, who wore a baseball cap, sunglasses and white shoes. The LaSalle Bank teller, Monica Fudala ("Fudala") selected a photo of Galati as one of two out of a group of six that "resembled" the robber. During the trial, Fudala identified a pair of sunglasses and blue shorts belonging to Galati as one's similar to those worn by the robber. Seven days after the First Chicago Robbery, the bank teller, Emily Batilo ("Batilo") selected Galati from a group of six photographs. In her view, the other persons pictured in the photo array either had longer hair, paler skin, a bigger build, or more facial hair, unlike the robber.

In addition to the out-of-court identification of Galati by the bank tellers, the government offered substantial indirect evidence placing Galati at each bank on the date and at the time the robberies occurred. Donald Lucki ("Lucki"), a recent acquaintance of Galati's, testified that he drove Galati to LaSalle and First Chicago Bank on both the days and around the times when each robbery occurred. Each time, Lucki said that Galati went into the bank, returned after ten to fifteen minutes and upon his return, told Lucki to drive. Galati did not have an account at either the LaSalle or First Chicago Banks. During the week of the robberies, Galati frequently gave Lucki money, in cash, for purchase of items such as a cellular phone recharge card or gas. Lucki kept receipts for many of these purchases, including ones showing that money was spent on July 1 and July 6 for these items. Lucki stated that after one robbery, they had a party during which pictures of Lucki, Galati, and Galati's girlfriend holding up money, were taken. At trial, the government offered the pictures corroborating Lucki's story.

Furthermore, from the surveillance tape of the robberies, the government obtained pictures of the robber's tattoos and after comparing them with pictures of Galati's tattoos, found a match. In addition, the government determined that two latent palm prints found at LaSalle Bank immediately following the robbery, from a counter where the demand note was written, belonged to Galati. The government also offered testimony from a salesperson at a store called MacFrugal's, Margo Sims ("Sims"), who said she saw Galati try on and buy a dark baseball cap with a USA logo in her store on July 6. Lucki confirmed that he drove Galati to MacFrugal's on that day and that Galati purchased a baseball cap. Batilo, the bank teller from the First Chicago robbery, which took place on July 6, 1998, noted that the baseball cap worn by the robber had a USA logo on it.

The government also submitted evidence that suggested Galati was staying in the area at the time the robberies took place and that he had significant amounts of cash available to him during that time. During the period between June 25 and July 2, 1998, Galati stayed in an Elk Grove motel, paying cash upon his departure. From July 1 to July 3, 1998, he stayed at an Arlington Heights motel and again paid cash. Finally, he stayed at the O'Hare Hyatt from July 3 to July 6, 1998 and paid the bill in cash before flying to Florida with his girlfriend. Also at trial, the government presented a witness who testified that two days after the First Chicago robbery, Galati took approximately $2,900, in small bills and banded bundles, to a nearby Citibank and exchanged it for travelers' checks. She identified Galati from the bank surveillance tapes.

After a jury trial, Galati was found guilty of each count charged in the indictment. Following Galati's conviction, the district judge denied Galati's motion for a judgment of acquittal and for a new trial. Galati was then sentenced to a prison term of twenty-one years.

II.
A. Motion for Judgment of Acquittal/New Trial

Galati asks this court to reverse his conviction, claiming that the district judge erroneously denied his motion for judgment of acquittal and for a new trial pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. Specifically, Galati argues that the evidence presented against him was insufficient to support his conviction. We review a district court's denial of a motion for judgment of acquittal and for a new trial deferentially and will reverse the lower court only upon a showing that the

court abused its discretion. "We affirm the district court's ruling as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hach, 162 F.3d 937, 942 (7th Cir. 1998). Additionally, evidence and inferences drawn from it are viewed in a light most favorable to the government. See United States v. DuPrey, 895 F.2d 303, 310 (7th Cir. 1989).

In assessing the sufficiency of the evidence, the court will not re-weigh the evidence or judge the credibility of witnesses. As long as there is a reasonable basis in the record for the jury's verdict, it must stand. See Dallis v. Don Cunningham & Assocs., 11 F.3d 713, 715 (7th Cir. 1993). Galati contends that without an in-court identification, the jury's verdict cannot be supported by the circumstantial evidence provided. He is incorrect. First of all, "it is well established that a jury's verdict may rest solely upon circumstantial evidence." United States v. Robinson, 177 F.3d 643, 648 (7th Cir. 1998); United States v. Todosijevic, 161 F.3d 479, 483 (7th Cir. 1998); United States v. Stockheimer, 157 F.3d 1082, 1087 (7th Cir. 1998). Standing alone, the circumstantial evidence the government presented in this case provides ample support for the jury's finding of guilt. Yet, the circumstantial evidence does not stand alone here. The government offered both direct evidence (in the form of the out-of-court identification by the bank tellers) and circumstantial evidence at trial.

While neither bank teller was able to identify Galati in court, they both picked him out of a photo array as the robber. The out-of-court identification took place within a week or so of the robbery, and so in that sense, the out-of-court identification is likely to be more reliable than the in-court identification (or failure to make an in-court identification) which occurred a year after the robbery. In addition, there is a tremendous amount of evidence placing Galati at each robbery. First, Lucki testified that he drove Galati to both LaSalle and First Chicago, on the same date and at the same time that the robberies occurred. He let Galati out of the car, and after ten to fifteen minutes, Galati returned with cash. Even though Lucki's lack of knowledge about the unlawful purpose of these trips to the bank seems questionable, the fact that Lucki could present receipts and photographs corroborating his story and a lack of motive on Lucki's part to lie suggest his truthfulness.

Second, the police matched palm prints found at LaSalle just after the robbery to Galati's prints. Galati did not have an account at LaSalle

Bank and therefore, it is likely that he had no legitimate reason to visit the bank. Third, the tattoos of the robber in the surveillance tape matched Galati's. Fourth, Sims, the MacFrugal's salesperson, identified Galati as the man she saw trying on and purchasing a hat that resembled the one worn by the robber later that day.

Although this evidence is probably enough to support the jury's guilty verdict, there is even more evidence linking Galati to the robberies. The Citibank surveillance tapes show Galati cashing in small denomination bills for travelers' checks. During his stay at several area hotels, he paid in cash and moved around three times in a week. The police also linked clothes found in Galati's possession to the clothes that both Batilo and Fudala said the robber wore and that the surveillance tapes showed the robber wearing. As such, there is more than enough evidence to justify the jury's guilty verdict. "Reversal is warranted 'only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt.'" United States v. Hall and Walker, 212 F.3d 1016, 1024 (7th Cir. 2000) (citing United States v. Garcia, 35 F.3d 1125, 1128 (7th Cir. 1994)). In light of the high burden the law places on defendants seeking reversal of a conviction and the substantial evidence presented by the government, we must reject Galati's argument that there was insufficient evidence to sustain his conviction.

B. Motion to Suppress Out-of-Court Identification

Next, Galati argues that the district judge should have suppressed the out-of-court identification made by Fudala and Batilo, the bank tellers, because the photo array was unduly suggestive and the identifications were unreliable. Ordinarily, we review a district court's denial of a party's motion to suppress out-of-court identification testimony arising from a photo array for clear error. See United States v. Moore, 115 F.3d 1348, 1359 (7th Cir. 1997). However, the government argues that because Galati failed to renew his motion during or after trial, the court should review the decision for plain error only. When he rendered his decision on Galati's pre-trial motion to suppress, the district judge denied the motion to suppress without prejudice and told Galati to raise it again during the course of the trial. The question is whether the district judge's invitation (rendering his ruling conditional) required Galati to renew his objection during trial or face not preserving the issue for trial.

Wilson v. Williams, 182 F.3d 562, 564 (7th Cir. 1999), specifically holds that "a definitive ruling in limine preserves an issue for appellate review--without the need for later objection." However, "this is just a presumption, subject to variation by the trial judge, who may indicate that further consideration is in order." Id.

Under Wilson, the district judge's ruling was not definitive. In fact, it was expressly conditional. When making his ruling, the district judge said,

[B]ecause it is possible when the witnesses are done testifying, the nature of the description and the way it fits in with the photo array might become significant. . . . We will just have to face the question of whether, if I find, knowing more than I know now, that the identification ought not to be permitted, whether we mistry the case, whether I instruct the jury to disregard the identification, or a variety of things.

Tr. at 8. So, we review the district judge's decision to admit the photo array identification evidence for plain error. "Plain error review under Rule 52(b) allows us to reverse the district court only if we conclude that: (1) error occurred; (2) the error was plain; and (3) the error affected the defendant's substantial rights." United States v. Gibson, 170 F.3d 673, 678 (7th Cir. 1999). The district judge found that on its face, the photo array was not impermissibly suggestive. We agree. There was no plain error here.

There is a two-step test for evaluating a challenge to identification testimony. "Defendant must first establish that the identification procedure employed was unreasonably suggestive." United States v. Funches, 84 F.3d 249, 253 (7th Cir. 1996). Next, the court must determine "whether the identification, viewed under the totality of circumstances, is reliable, despite the suggestive procedures." Id. Galati maintains that even though the bank robber had short hair, with little of it showing underneath the baseball cap he wore, four of the men pictured in the photo array shown to the bank tellers had long hair. He further argues that the four long-haired individuals looked much older than the men pictured in the remaining two photos and that only the two younger looking men were pictured with chains around their necks. According to Galati, the chains unfairly suggested that these two men had criminal records./2 Galati also contends that of the two younger looking, short-haired individuals pictured, only one (Galati) had brown hair like the bank robber; the other had dark, black hair. Galati believes that with

such an array, containing only one short-haired, younger looking, brown-haired man with a chain around his neck, the witnesses had no choice but to select him from the photo spread.

Despite the alleged discrepancies in appearance among the different individuals pictured, our own review of the six photographs used in the array confirm that it was not unduly suggestive. The six men pictured all fit the general descriptions offered by Fudala and Batilo./3 They all appear to be white men in their 40's, with dark and relatively short hair. None of the men have truly long hair. The differences Galati points to are not substantial ones. Two of the men appear like they might be somewhat older and heavier. However, the differences are not overly conspicuous and both men still fit the descriptions given by the witnesses. As such, we see nothing in the photo array that would have caused the bank tellers to pick out Galati as opposed to any of the other five men pictured (except of course the fact that Galati was indeed the bank robber in question).

There are several cases with similar facts where this court has come to the same conclusion. United States v. Moore, 115 F.3d 1348, 1360 (7th Cir. 1997) (approving photo array where pictures were of six young, clean shaven, black males with some hair, and at least some similar features); Funches, 84 F.3d at 253 (rejecting defendant's claim that line-up was suggestive where he was oldest, shortest, and weighed the least); United States v. Sleet, 54 F.3d 303, 309 (7th Cir. 1995) (approving photo array where six men pictured were all black men about the same age). Here, although the men pictured in the photo array do not all look exactly alike, they do not have to. "A lineup of clones is not required." United States v. Arrington, 159 F.3d 1069, 1073 (7th Cir. 1998). The district court did not commit plain error by denying Galati's motion to suppress Fudala and Batilo's out-of-court identification./4

C.Exclusion of Prior Convictions on Cross-Examination

Galati contends that the district judge erred in his decision to limit the scope of defense counsel's cross-examination of witnesses Lucki and MacFrugal's salesperson, Sims. He maintains that under Federal Rule of Evidence 609(a), he should have been able to introduce Lucki's prior conviction for shoplifting to impeach Lucki's credibility. Galati also argues that under Rules 609(a) and 404(b), defense counsel should have been permitted to admit evidence concerning Sims' prior conviction for drug possession to impeach

her testimony. We review a district court's decision to limit the scope of cross-examination under an abuse of discretion standard. See United States v. Hernandez, 106 F.3d 737, 740 (7th Cir. 1997); United States v. Torres, 965 F.2d 303, 310 (7th Cir. 1992).

1. Lucki's Prior Shoplifting Conviction

Galati claims that Lucki's shoplifting conviction shows his dishonesty and that under Federal Rule of Evidence 609(a)(2), Galati's counsel should have been able to impeach Lucki's credibility with that information. Rule 609(a)(2) provides that to attack a witness's credibility, a party may present evidence that a witness has been convicted of a crime involving dishonesty or false statements. See Fed. R. Evid. 609(a)(2). It is important however, to keep in mind that "the purpose of admitting prior arrests or convictions is not to show that the witness is a bad person . . . but to impeach his credibility." United States v. Neely, 980 F.2d 1074, 1079 (7th Cir. 1992).

The district judge held that Lucki's 1981 shoplifting conviction did not involve deceit so as to satisfy the requirements of Rule 609(a). A review of the nature of Lucki's conviction suggests that the district judge was correct. As a nineteen year-old college student, Lucki got caught shoplifting a cassette tape. The whole thing cost Lucki less than $35.00 (fine and restitution) and some time under court supervision. Galati claims that revealing this one-time shoplifting episode, which occurred almost twenty years prior to Lucki's involvement in this case, along with other evidence, would have shown that Lucki was a liar. However, "petty shoplifting does not, in and of itself, qualify as a crime of dishonesty under Rule 609." United States v. Owens, 145 F.3d 923, 927 (7th Cir. 1998).

We have held in United States v. Amaechi, 991 F.2d 374, 378 (7th Cir. 1993), that petty shoplifting does not qualify as a crime of dishonesty unless it involves items of significant value. Lucki's stolen cassette tape hardly qualifies. Further, the probative value of this 20 year old conviction, for a crime committed when Lucki was a college student is minimal. See United States v. Reed, 2 F.3d 1441, 1448-49 (7th Cir. 1993). Galati argues that because Lucki was an important witness for the government, he really should have been permitted to impeach Lucki with the prior conviction. However, Lucki's role as a key witness does not change the state of the law. Therefore, the

district judge did not abuse his discretion in refusing to allow defense counsel to raise Lucki's prior conviction.


### 2. Sims' prior drug possession conviction

Galati also challenges the district judge's decision concerning Sims' prior drug possession conviction under Rule 609(a)(1). In 1993, Sims, the store clerk at MacFrugal's, was arrested and convicted for possession of 10 Diazepam tablets and 2.5 Xanex tablets. Five years later, long after she had served her sentence of one year probation, Sims testified that she saw Galati in MacFrugal's trying on a baseball cap, identical to the one worn by the robber, on the same day the robber was videotaped at the bank wearing a baseball cap. Galati asserts that Sims' testimony is incredible and argues that his defense counsel should have been permitted to use Sims' prior conviction to impeach her testimony. Even though Sims does not know Galati personally and had only brief contact with him at the store, Galati contends Sims had a motive to give untruthful testimony. He maintains that Sims' drug possession conviction shows that she had an increased motive to please the FBI and give helpful testimony.

Rule 609(a)(1) admits evidence involving prior convictions for felonies resulting in significant jail time or death, as long as the probative value outweighs prejudicial effect to the accused and Rule 403 is satisfied./5 Federal Rule of Evidence 403 states that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The district judge determined that although Sims' prior drug possession conviction was a felony, under Rule 403, it was not admissible. Frequently, "evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." Neely, 980 F.2d at 1081 (citing United States v. Robinson, 956 F.2d 1388, 1397 (7th Cir. 1992)). This would certainly have been the case here, because Sims' drug conviction had little or no bearing on the reliability of her testimony. As to her ability to perceive the events in question, the court did allow testimony that Sims was using Methadone to treat her heroin addiction. Therefore, jurors had all the information they needed to consider the effect Sims' drug use may have had on her perception at the time she saw Galati. Her 1993 drug possession

conviction, which resulted in no jail time and occurred five years prior to her testimony, tells jurors nothing more about her credibility. The evidence that Sims was convicted of drug possession has little probative value, if any. At the same time, the likelihood of unfair prejudice was great.

In this case, the district judge wisely gauged the potential for jurors to see Sims' prior drug possession conviction as a reason to discount her entire testimony, even though nothing about her conviction actually suggests the likelihood that she would be dishonest or deceitful. A drug related offense cannot be admitted "for the sole purpose of making a general character attack." Neely, 980 F.2d at 1081 (citing United States v. Cameron, 814 F.3d 403, 405 (7th Cir. 1987)). Thus, under Rule 609(a)(2), Sims' prior conviction should not have been admitted.

Galati also contends that under Rule 404(b), Sims' prior drug possession conviction should have been admitted to reveal that she had a unique motive to cooperate with authorities and to provide information that she might think was helpful to them. Federal Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, the rule creates an exception whereby evidence of a witness's other crimes or acts may be admissible to prove motive. Id.

The truth of the matter is that Sims' prior drug conviction reveals little about her motive to cooperate. We fail to see how Sims' prior conviction would give her a motive to lie about seeing Galati purchase a hat at MacFrugal's. Sims' conviction occurred approximately five years prior to her involvement in the case. Furthermore, Sims was only an occurrence witness, with no real reason to lie. Sims did not witness the defendant engaged in illegal behavior such that she would be compelled to inform authorities about his behavior. In fact, she reported seeing Galati only after the manager called her over to speak with FBI agents who were investigating the bank robberies.

Sims was asked to review a photo spread to determine if anyone from the six pictures had been in the store recently. After examining the photo line-up, she identified Galati. She testified that while she was taking down Fourth of July merchandise in the store, she noticed Galati picking out a baseball hat with a USA logo. It is far-fetched to think that because Sims was convicted of drug possession, she would be driven to lie about having seen Galati, just

to cooperate with authorities. Sims' prior drug possession conviction does not prove that her testimony was tainted by an unpure motive. Therefore, it was properly excluded under Rule 404(b) as well.

Since neither Lucki's shoplifting conviction nor Sims' drug possession conviction shed any real light on either witness's credibility, we find that the district judge did not abuse his discretion in granting the government's motion in limine.

D.  Career Criminal Enhancement

In light of a 1981 conviction for armed robbery in state court and other prior convictions for crimes of violence, Galati was sentenced as a Career Criminal Offender under U.S.S.G. sec. 4B1.1. Galati does not argue that sec. 4B1.1 was wrongly applied. Instead, he contends that under the Fifth Amendment Due Process Clause, the government should have been required to submit information detailing the basis for any sentence enhancement, prior to trial, as it must do under 21 U.S.C. sec. 851./6 In overruling Galati's objection to his sentence, the district judge held that sec. 851 did not apply to Galati's sentence enhancement and due process did not require it to apply. This is a settled question. Constitutional due process does not require that the government inform Galati, before trial, that it would pursue a higher sentence in light of his prior armed robbery conviction.

In United States v. Damerville, 197 F.3d 287, 289 (7th Cir. 1999), we held that defendants subject to sentencing as career offenders under sec. 4B1.1 "are not entitled to the same procedural protections as defendants subject to the sec. 841(b) penalty enhancements (for which sec. 851 applies)." See also, United States v. Jackson, 121 F.3d 316, 319 (7th Cir. 1997); United States v. Robinson, 14 F.3d 1200, 1206 (7th Cir. 1994). "The filing of an enhancement information before entry of a guilty plea, while mandated by sec. 851 to trigger enhancement under sec. 841(b), is not a prerequisite when the government seeks career offender sentences under the guidelines." Damerville, 197 F.3d at 289. Galati's sentence was enhanced under sec. 4B1.1, not sec. 841(b) and the only due process required was provided when Galati received the pre-sentence investigation report containing the recommendation for a sec. 4B1.1 enhancement. Id. at 290. The procedural requirements of sec. 851 simply do not apply to ordinary sentence enhancements under the Guidelines. Therefore, we conclude that the district court did not err in sentencing Galati as a career offender under sec.

4B1.1.

III.

For the reasons set forth above, we AFFIRM the judgment of the district court.

/1 During the First Chicago robbery, the note Galati wrote varied only slightly. It read, "Give me all the money, I have a gun."

/2 A close look at the photo array suggests that three of the individuals pictured were wearing chains.

/3 Fudala described the bank robber as a white male in his late thirties or early forties, with dark colored, neatly cut, short hair, about 5'10"-6' tall and approximately 170-180 pounds. Batilo described the robber as a white male in his forties, about 5'9"- 5'10" tall, with possibly brown hair, a tan complexion and a medium build.

/4 Once the court determines that the challenged identification was not the result of an unduly suggestive photo array, it need not consider whether or not the identification itself was reliable. Sleet, 54 F.3d at 309.

/5 Galati also suggests that Rule 609(a)(2) applies. It does not. Rule 609(a)(2) admits evidence involving prior convictions for any crime implicating dishonesty or false statements. The drafters of the Rules of Evidence sought to limit Rule 609 to crimes involving "some element of misrepresentation or other indication of a propensity to lie and excluding those crimes which, bad though they are, do not carry with them a tinge of falsification." Amaechi, 991 F.2d at 378 (citation omitted). A person's past drug possession does not necessarily implicate dishonesty and this court has rejected the argument that "people who have used drugs are more likely to tell lies." Neely, 980 F.2d at 1081. Therefore, we find that Rule 609(a)(2) does not apply here.

/6 Section 851 applies to defendants convicted of drug conspiracy under 21 U.S.C. sec. 841 and provides that if the government intends to seek increased punishment because of a defendant's prior conviction, "the United States attorney [must file] an information with the court . . . stating in writing the previous convictions to be relied upon." 21 U.S.C. sec. 851.