In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3172

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY WOODROW HARRIS,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-CR-50--Rudolph T. Randa, Judge.

Argued February 12, 2001--Decided February 22, 2002

Before CUDAHY, ROVNER, and WILLIAMS, Circuit Judges.

ROVNER, Circuit Judge.  Larry Woodrow Harris was convicted after a jury trial of bank robbery in violation of 18 U.S.C. sec. 2113(a). The district court sentenced him to 210 months' incarceration and three years' supervised release, and also ordered him to pay $2,180 in restitution. On appeal Harris argues that his conviction was tainted by a dubious line-up identification and two erroneous evidentiary rulings. We affirm.

I.  Background

On the morning of September 1, 1999, a man walked into an M & I Bank branch in Milwaukee and approached a teller named Talesha Wallace. The man handed Wallace a note stating that he had a gun and wanted money. After Wallace read the note, the man told her "now." Wallace handed over the money, and the man instructed her not to do anything until he left. The man exited the bank, money and note in hand.

Police arrived soon after the robbery. Wallace described the robber as African-American, in his mid-50s, heavy-set, dark complected, with black and gray hair, and wearing a dark T-shirt with a logo on the front and dark blue trousers. The following day police showed Wallace

photographs of four individuals, and she tentatively selected Harris as the perpetrator.

That same day an anonymous person told investigators that he had worked with Harris and that Harris had bragged about committing various robberies. The informant also told investigators that Harris had tried to recruit him days earlier to assist in a bank robbery. He then identified Harris as the man pictured in the bank's surveillance footage.

Acting on this tip, police interviewed Louis Graber, the office manager at Instant Labor Temporary Help Agency, Harris's employer. Graber identified Harris as the man in the surveillance photograph. Six months later Wallace was asked to view a five-person line-up, and she again identified Harris as the perpetrator.

Before trial Harris moved to suppress Wallace's line-up identification, arguing that it was unduly suggestive because the police had showed Harris's picture to Wallace a day after the robbery. After a hearing the district court denied the motion upon the recommendation of the presiding magistrate judge.

Harris then filed a motion in limine to exclude testimony regarding the anonymous tip on the grounds that it would be overly prejudicial and irrelevant, and would constitute inadmissible propensity evidence. The district court granted the motion in part, permitting the government only to present evidence that the police had information that Harris worked at Instant Labor.

At trial Harris called as a witness Ralph Spano, one of the detectives present at the line-up identification. After defense counsel asked Spano about witnesses who viewed the line-up other than Wallace, the government objected on the ground of hearsay. At a side-bar conference, defense counsel told the court that she intended to ask Spano if there were any witnesses at the line-up who did not identify Harris as the robber. The court sustained the government's objection.

II. Discussion

On appeal Harris contends that the district court erred by (1) allowing Wallace's line-up identification to be admitted into evidence because it was unduly suggestive, (2) allowing the government to refer to the anonymous tip, and (3) preventing him from eliciting testimony from a detective that two witnesses could not identify him as the robber.

A.   Line-up Identification

The standard of review for decisions refusing to suppress an identification has been described both as clear error, see United States v. Galati, 230 F.3d 254, 259 (7th Cir. 2000); United States v. Moore, 115 F.3d 1348, 1359 (7th Cir. 1997); United States v. Funches, 84 F.3d 249, 253 (7th Cir. 1996), and as de novo with due deference to the district court's findings of historical fact, see United States v. Downs, 230 F.3d 272, 275 (7th Cir. 2000) (citing Ornelas v. United States, 517 U.S. 690 (1996)); United States v. Newman, 144 F.3d 531, 535 (7th Cir. 1998); see also United States v. Curry, 187 F.3d 762, 768 (7th Cir. 1999) (recognizing but not resolving this "apparent inconsistency").

Consistent with Ornelas, we conclude that the latter standard of review is appropriate--a district court's decision to admit or suppress a line-up identification should be subject to de novo review with due deference to the court's findings of historical fact. This standard conforms to that followed in our sister circuits. See, e.g., United States v. Bowman, 215 F.3d 951, 965 n.9 (9th Cir. 2000); United States v. Flores, 149 F.3d 1272, 1278 (10th Cir. 1998); United States v. Puckett, 147 F.3d 765, 769 (8th Cir. 1998); United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). In Ornelas the Supreme Court held that certain law enforcement actions that implicate a suspect's Fourth Amendment rights, such as determinations of probable cause and reasonable suspicion, should be reviewed de novo. See United States v. D.F., 115 F.3d 413, 416-17 (7th Cir. 1997). The Court noted that a police officer's assessments of probable cause and reason able suspicion involve common-sense, practical considerations of everyday

life; the propriety of these determinations depends on the facts of the particular case. Ornelas, 517 U.S. at 695-96. In light of the particularized factual context in which such decisions are made, the Court concluded that the policy of sweeping deference embodied by the clear error standard would allow different trial judges to reach disparate conclusions in similar factual circumstances, yielding varied results that would be inconsistent with the idea of a unitary system of law. Id. at 697. The same principle applies to the propriety of line-up identifications-- their legitimacy depends on the facts of each case. A de novo standard of review with due deference to findings of historical fact will better unify case precedent and provide law enforcement officers with a defined set of rules when they conduct line-ups. Id. at 697-98.

   In this case the district court properly admitted the line-up identification. We conduct a two-step test in evaluating a challenge to the admissibility of a line-up identification. Harris must first establish that the line-up was unduly suggestive. See Downs, 230 F.3d at 275. If the line-up was suggestive, we must determine whether the identification was nevertheless reliable. See Galati, 230 F.3d at 259. Here, we need not reach the second step because there was nothing unduly suggestive about Wallace's line-up identification. The four other men in the line-up physically resembled each other and fit the detailed description first given by Wallace--all of the line-up participants were of similar age, height, weight, and general complexion, and all had facial hair and wore identical baseball caps. We have approved repeatedly line-ups composed of individuals who share like physical features. See id. at 260; Moore, 115 F.3d at 1360; Funches, 84 F.3d at 253; United States v. Sleet, 54 F.3d 303, 309 (7th Cir. 1995). Harris argues that the line-up was unduly suggestive because he was the only person to appear in both the photo array and line-up. But there is nothing impermissible about placing the same suspect in two different identification procedures. See Gullick v. Perrin, 669 F.2d 1, 5 (1st Cir. 1981). Moreover, the photo array was reasonable--police showed Wallace four pictures of four men, all having similar physical

characteristics. And Wallace's line-up identification occurred nearly six months after she was first shown the photo array; after such a substantial passage of time, it is unlikely that she was influenced by the earlier photograph, let alone that it led to misidentification.

B. Anonymous Tip

Harris also contends that the district court erred by admitting testimony regarding the anonymous tip, a decision we review for abuse of discretion. See United States v. Hunt, 272 F.3d 488, 494 (7th Cir. 2001). The court, leery of admitting evidence that Harris had bragged of committing other robberies, limited the government's inquiry to why the police went to Instant Labor. In accordance with the court's ruling, the government asked a police detective the following two questions:

COUNSEL: Did you have occasion to meet with a person by the name of Louis Graber on September 2, 1999?

DETECTIVE BEYER: Yes, I did.
COUNSEL: And very briefly, why was that?

DETECTIVE BEYER: I had information that the suspect in this robbery may work at Instant Labor, with the office being in the 2200 block of South Muskego.

(Tr. at 78-79.)

Harris argues that this evidence is irrelevant and unfairly prejudicial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; United States v. Rhodes, 229 F.3d 659, 661 (7th Cir. 2000). Contrary to Harris's assertion, Beyer's limited testimony was relevant because it explained why the police interviewed Graber, who was not present at the bank but nevertheless aided the investigation by identifying Harris as the man pictured in the surveillance photograph.

Harris's challenge under Federal Rule of Evidence 403, which provides that relevant evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, see United States v. Bogan, 267 F.3d 614, 622 (7th Cir. 2001), also fails. Even if the probative value of this testimony was marginal, Harris cannot demonstrate prejudice. The jury did not hear the substance of the tip; Beyer made no mention that the anonymous source told police that Harris had bragged about committing other robberies. As a result the court did not abuse its discretion by allowing the testimony.

C.  Failed Identifications

Harris also argues that the district court erred by precluding him from eliciting testimony at trial that twowitnesses were unable to identify him at the line-up as the robber. The court sustained the government's objection that such evidence constituted inadmissible hearsay, a determination we review for abuse of discretion. See United States v. Green, 258 F.3d 683, 689 (7th Cir. 2001). Defense counsel tried to ask Spano whether any other witnesses present at the line-up had failed to identify Harris as the perpetrator. The court correctly concluded that this line of questioning called for inadmissible hearsay, i.e., an out-of-court statement offered in evidence to prove the truth of the matter asserted. See Fed. R. Evid. 801(c); United States v. Williams, 272 F.3d 845, 859 (7th Cir. 2001). Harris contends that he wanted merely to introduce evidence that only one of the three witnesses had selected him as the robber. This line of questioning, however, represented a back-door attempt to submit second-hand (and unchallengeable) evidence suggesting that Harris may not have been the person they saw who robbed the bank. The court correctly prohibited the inquiry--Harris could have called both witnesses to testify but chose not to, giving the government no opportunity to cross-examine them as to why they could not identify Harris. And because no exception to the hearsay rule applies, the district court's refusal to allow such testimony was not an abuse of discretion.

AFFIRMED.