In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1355

Timothy Cossel,

Petitioner-Appellant,

v.

Charles Miller,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. EV 97-87-C-B/H--Sarah Evans Barker, Chief Judge.

Argued July 12, 2000--Decided October 12, 2000

Before Ripple, Rovner, and Williams, Circuit Judges.

Williams, Circuit Judge.  Timothy Cossel filed this habeas corpus petition challenging his 1989 state convictions for rape, criminal confinement, criminal deviate conduct, battery, and burglary, in part on the ground that his trial counsel rendered constitutionally ineffective assistance of counsel by failing to properly object to testimony by the victim relating to her identification of him as her attacker. In state post-conviction proceedings, the state courts rejected this claim, reasoning that the victim had an independent basis for her in-court identification of Cossel, which eliminates any argument that trial counsel could have been ineffective in failing to object to her testimony. The federal district court dismissed Cossel's habeas corpus petition with prejudice on the ground that the Indiana Court of Appeals did not misapply federal law. Because we cannot agree, we reverse.

I

State court findings of fact are presumed correct unless the petitioner rebuts the presumption with "clear and convincing" evidence. 28 U.S.C. sec. 2254(e)(1). Cossel does not challenge the state court findings regarding the facts of the crime, so they control. The state appellate court found as follows:

On April 25, 1983, shortly after 10:15 p.m., K.D. put her child to bed and went to bed herself. She was awakened shortly thereafter when a man removed her covers, pulled up her nightgown and jumped on her, putting a knife to her back. The attacker then threatened to kill both her and the child if she resisted.

The attacker attempted to engage in anal sex, which was extremely painful for K.D. The man then warned her not to look at his face, turned her over and covered her face with a pillow. He then raped K.D. He then turned her back over, jabbed her in the back with the knife and told her if she reported the assault that he would kill her and the child. The man then left.

Cossel v. State, 675 N.E.2d 355, 358 (Ind. Ct. App. 1996) (quoting earlier unpublished order affirming Cossel's conviction).

Although the police originally suspected another man, they eventually turned their attention to Cossel. In July 1984, police officer Joe Davis arranged for K.D. to view a photographic array that included a picture of Cossel./1 When K.D. was unable to identify any of the people in the photographs as the attacker, Officer Davis singled out Cossel's picture, identified the photo as a picture of Tim Cossel, and showed it to K.D. Again, K.D. did not recognize Cossel. Cossel's picture was the only one K.D. remembered Officer Davis singling out to show her.

Almost two years later, in May 1986, Officer Davis had K.D. accompany him to Owensboro, Kentucky, to view a lineup. K.D. testified that Officer Davis told her the reason for this lineup was that Cossel was in Owensboro. K.D. was under the impression that Cossel would be in the lineup and she was to see if she could recognize him. K.D.'s husband had told her that he believed Cossel was the attacker, and K.D. testified at trial that she was under the impression that Officer Davis believed that as well. K.D. did identify Cossel in the lineup, but she did not recognize his voice. Based on K.D.'s identification, the state charged Cossel with rape, criminal confinement, criminal deviate conduct, battery, and burglary.

Prior to trial, defense counsel did not move to suppress or otherwise limit trial testimony relating to K.D.'s identification of Cossel as her attacker, despite having notice of the circumstances surrounding that identification. At trial, therefore, the state elicited testimony

from K.D. and Officer Davis regarding the photo array, the one-photograph show-up, and the Owensboro lineup. K.D. also identified Cossel in court during the trial. Counsel failed to make a contemporaneous objection to the admission of either the out-of-court identification procedures or K.D.'s in-court identification. Instead, counsel waited to object until the close of K.D.'s testimony and then later moved to dismiss at the close of the state's case-in-chief. The trial court overruled the objection and denied the motion. In denying the motion to dismiss, the court explained:

This court was extremely careful in listening to the identification evidence because the police officer involved, Officer Davis, has repeatedly and consistently ruined cases by impermissibley [sic] suggestive conduct. I do think in this case the evidence is sufficient for several reasons that this case need not be thrown out because of an impermissibley [sic] suggestive i.d., lineup. Therefore, I'll let the matter go and if there's a conviction I'm sure that matter will be carefully looked at by the Court of Appeals.

In reaching this conclusion, the trial court was presumably relying on the strength of K.D.'s testimony regarding what she was able to see the night of the attack and why, apart from the out-of-court identifications, she believed Cossel was her attacker. Her testimony in this regard was later summarized by the Indiana Court of Appeals:

K.D. testified that although the house was "shadowy," she could clearly see because there was light from the moon and a street light shining into the house. K.D. observed Cossel's face for approximately ten seconds when she was being turned from her stomach to her back. While K.D. was lying on her back, she was able to view

Cossel's chin and mouth area. Because Cossel was on top of K.D., the distance between the two parties was not great. After seeing Cossel's face, K.D. "felt like [she] knew this person" and that he knew K.D. K.D. testified that she had seen Cossel three months earlier when she and her husband had purchased a vacuum cleaner. Cossel, 675 N.E.2d at 361 (citations omitted).

The only other evidence linking Cossel to K.D.'s rape were the results of a serological analysis, which concluded that K.D.'s attacker was in a class of at least 32% of the population who are "non-secreters," and possibly an even larger segment of the population that includes "secreters" whose serological samples have been "diluted out." Cossel is a non-secreter. But the DNA tests were inconclusive, there were no

fingerprint matches, and none of the hair strands taken from K.D.'s rape kit could have come from Cossel. There was, however, one strand of pubic hair that matched neither K.D. nor Cossel. Finally, a footprint outside of K.D.'s window was identified as that of the attacker. The print was from a lug-soled work boot and measured 13 inches in length. Cossel did not own any shoes or boots matching the footprint, and when the sole of his shoe was measured in court, it was only 12 inches long./2 On the basis of the evidence against him, Cossel was found guilty by a jury and sentenced by the court to 148 years' imprisonment.

On direct appeal, Cossel was represented by trial counsel. Counsel appealed the district court's admission of K.D.'s identification testimony, and the state conceded that the out-of-court identification was impermissibly suggestive. The state argued, however, that an independent basis for K.D.'s in-court identification existed because she saw her attacker for ten seconds during the rape. The Indiana Court of Appeals declined to address the merits of this dispute because Cossel's counsel had waived the issue by not making a contemporaneous objection.

Cossel then filed a petition for state post-conviction relief, based in part on his claim that counsel was constitutionally ineffective for not objecting contemporaneously to K.D.'s identification of Cossel. The state post-conviction judge, who also had presided over Cossel's trial, ordered an evidentiary hearing at which Cossel's trial counsel testified. Counsel, who by that time had been suspended from the practice of law for reasons unrelated to Cossel's case, testified that he knew before trial that there were problems with the pretrial identifications being unduly suggestive. Counsel also stated that he thought the objection he made at the close of K.D.'s testimony would preserve the issue for appeal. Finally, when asked whether it was part of his strategy to withhold his objection to the identification testimony, counsel responded, "No, it was not a strategy move." Following the hearing, the state court denied Cossel's petition. Cossel appealed, and the Indiana Court of Appeals found that any error in admitting evidence of the impermissibly suggestive lineup identification was harmless because the in-court identification had sufficient independent support, and thus Cossel's counsel was not ineffective. It is unclear from the present record whether Cossel filed a petition for transfer to the Indiana Supreme Court.

Cossel next filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Indiana. The district court dismissed the petition with prejudice, holding, in relevant part, that the Indiana Court of Appeals's application of Strickland v. Washington, 466 U.S. 668 (1984), to Cossel's ineffective assistance of counsel claims was a reasonable application of federal law. Cossel appealed and this court issued a certificate of appealability for Cossel's claim of ineffective assistance of counsel as it pertained to trial counsel's failure to properly object to the victim's identification of Cossel.

II

Before coming to the merits of Cossel's appeal, we must address the state's argument, made for the first time on appeal, that Cossel has procedurally defaulted the ineffective assistance of counsel claim he advances in this court by failing to present the claim to the Indiana Supreme Court. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (holding that petitioners must invoke one complete round of a state's established appellate review process). This is a somewhat remarkable argument, given that, before the district court, the state specifically noted that, in contrast to many of Cossel's ineffective assistance of counsel claims, the one under consideration in this appeal was adequately presented to the state courts and had been preserved for federal review./3 A litigant that fails to present an argument to the district court cannot rely on that argument in the court of appeals, and this rule certainly encompasses a litigant that adopts a position on appeal that is contrary to its position in the district court. Thus, by failing to make its procedural default argument to the district court, the state has waived the argument. See Hernandez v. Cowan, 200 F.3d 995, 997 (7th Cir. 2000); Henderson v. Thieret, 859 F.2d 492, 497-98 (7th Cir. 1988).

In any event, the state has provided no support for its position that Cossel failed to present the claim now on appeal to the Indiana Supreme Court. The state simply asserts that "Cossel's failure to present the ineffectiveness claim in his petition to transfer to the Indiana Supreme Court preclude[s] this [c]ourt from addressing those claims on federal collateral review," and then cites to two docket sheets reprinted in the appendix to its brief. We cannot tell what courts these docket sheets are from, or where they make any reference to the claims raised in or omitted from Cossel's petition for transfer to the Indiana Supreme Court. Indeed, we can find no

copy of Cossel's petition for transfer in the record, thus we have no way of verifying the state's assertion.

III

Because Cossel disputes only the Indiana Court of Appeals's legal conclusion that K.D.'s in-court identification was independently supported by her ten-second viewing of her assailant during the attack, 28 U.S.C. sec. 2254(d)(1) governs our review of Cossel's ineffective assistance of counsel claim. Under sec. 2254(d)(1), a petitioner cannot obtain habeas corpus relief on a claim that the state courts have addressed on the merits unless the decision handed down by the last state court to consider the claim is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. sec. 2254(d)(1); see Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). A state court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 120 S. Ct. at 1523. A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In order to establish a constitutional basis for habeas corpus relief, Cossel must first show that his counsel's performance fell below an objective standard of reasonableness. See Strickland v. Washington, supra, 466 U.S. at 687-88. There was no physical evidence linking Cossel to the attack on K.D.; thus, K.D.'s identification of Cossel was the pivotal evidence in the case. Nevertheless, Cossel's counsel did not move to suppress any evidence regarding the out-of-court identification procedures, nor did he argue that any in-court identification that K.D. might make would necessarily be tainted by the suggestive out-of-court procedures. Once the trial was underway, counsel did not object to either the evidence about the out-of-court identification procedures or K.D.'s in-court identification until after K.D. had finished her testimony. As a result, Cossel was denied both a pre-trial ruling and a contemporaneous ruling on the admissibility of the identification testimony. Counsel's inaction also led the Indiana courts to deem the issue waived.

This court confronted similar conduct in Rodriguez v. Young, 906 F.2d 1153, 1161 (7th Cir. 1990), in which counsel did not move to suppress a witness's in-court and out-of-court identification testimony, although police had presented her with an apparently unduly suggestive show-up. In Rodriguez, this court concluded that counsel's failure to file a suppression motion "was not a decision that might be considered sound trial strategy, or the result of reasonable professional judgment. It was objectively unreasonable and outside the wide range of professionally competent assistance." Id. (internal quotation marks and citations omitted). Similarly, counsel's actions in not moving to suppress or object to K.D.'s identification testimony fell below Strickland's objective reasonableness standard.

Cossel must next show that there is a reasonable probability that, but for his trial counsel's errors, the result of his trial would have been different. Strickland, 466 U.S. at 694. Such a probability exists if counsel's errors undermine confidence in the jury's verdict. Id. Because K.D.'s identification testimony was the primary and most compelling evidence introduced against Cossel at trial, whether his trial counsel's failure to object to K.D.'s identification testimony was prejudicial turns on whether properly made objections to this testimony should have been sustained.

A defendant has a due process right not to be identified prior to trial in a manner that is "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 301-02 (1967). As early as Cossel's direct appeal, the state conceded that the single-photograph show-up and Owensboro lineup were indeed "unnecessarily suggestive" and conducive to misidentification. Therefore, K.D.'s testimony regarding these out-of-court identifications should have been suppressed. This conclusion does not resolve whether all of K.D.'s identification testimony should have been suppressed, however, as K.D. also identified Cossel in court, and in-court identifications are sometimes admissible despite a flawed pre-trial identification.

An in-court identification that follows an impermissibly suggestive pre-trial identification is admissible if under the "totality of the circumstances" the in-court identification was reliable. United States v. Duprey, 895 F.2d 303, 307 (7th Cir. 1989); see also Simmons v. United States, 390 U.S. 377, 384 (1968). In determining whether an identification is reliable despite suggestive pre-trial identification procedures, courts look to the "Biggers factors": (1) the

opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's pre-identification description of the criminal, (4) the level of certainty demonstrated by the witness at the time of the identification, and (5) the length of time between the crime and the identification. United States v. Newman, 144 F.3d 531, 536 (7th Cir. 1998); see also Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 199-200 (1972). When the suggestiveness of the out-of-court identification has been conceded, the government bears the burden of proving by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than at the prior, illegal identification, or, alternatively, of proving that the error complained of was harmless beyond a reasonable doubt. United States v. Wisniewski, 741 F.2d 138, 143 (7th Cir. 1984) (citing United States v. Wade, 388 U.S. 218, 240 (1967), and Chapman v. California, 386 U.S. 18, 24 (1967)). The state has consistently argued, and the Indiana and federal courts have consistently agreed, that, using the totality of the circumstances analysis set forth in Biggers and its progeny, K.D.'s in-court identification of Cossel was independently reliable.

But this conclusion is unsound. True, there is a plausible argument that the circumstances surrounding K.D.'s identification satisfy the first two of the five Biggers factors. Cossel concedes that K.D. had a ten-second window in which to view her assailant by the light of the moon and street light. K.D. was also able to view her assailant from a very close distance and, although Cossel disputes this, one can presume she viewed him with the level of attention likely from the victim of such a crime. See Biggers, 409 U.S. at 201 (rape victim giving identification testimony "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes").

However significant these two factors may be on their own, they are completely undermined by two of the remaining three factors./4 First and perhaps foremost, Cossel does not fit the pre-identification description K.D. provided of her attacker. In testimony before a grand jury in March 1984, K.D. described a man slightly smaller than her husband and definitely smaller than Cossel. She stated that the attacker was no taller than six feet and weighed between 140 and 150 pounds. In fact, K.D. stated that she initially mistook the assailant for her husband, who is six feet tall and weighed 160 pounds. K.D. also stated that the attacker could not possibly

have been as large as a man she knew who was 6'3" tall and weighed between 220 and 230 pounds. Cossel is 6'3" tall and weighed between 215 and 220 pounds at the time of the attack. Moreover, when first presented with a picture of Cossel in the photo array over a year after the attack, K.D. did not recognize him. Even after he was singled out and presented to her as the police's favored suspect, K.D. still did not recognize him. K.D. did eventually single out Cossel, in the lineup in Owensboro three years after the attack, but even then, she did not recognize his voice.

Furthermore, an extraordinarily long period of time elapsed between the attack and K.D.'s identification of Cossel. The attack occurred in April 1983. K.D. did not recognize Cossel until three years later, in the Owensboro lineup. The in-court identification did not occur until six years after the attack. Yet, in Biggers the Supreme Court observed that a lapse of seven months between the rape and the confrontation "would be a seriously negative factor in most cases." 409 U.S. at 201. The Court felt that the seven-month time lapse nevertheless was outweighed by the fact that the defendant was not included in any of the previous photo arrays or show-ups, and the victim had not previously identified anyone else from the photo arrays or at the show-ups. Id. The same is not true here. A delay over ten times longer than that the Supreme Court called "problematic" in Biggers preceded K.D.'s in-court identification of Cossel. Moreover, during that delay K.D. twice failed to identify Cossel as the assailant, even when he was presented to her as the police's favored suspect.

In light of the totality of the circumstances surrounding K.D.'s in-court identification of Cossel as her attacker, we are of the opinion that K.D.'s in-court identification lacks sufficient independent reliability to be admissible. The unduly suggestive pre-trial identification procedures used by the police irreparably tainted that and all other identifications made by K.D. Moreover, the circumstances surrounding K.D.'s in-court identification so clearly compel our conclusion in this regard that the Indiana Court of Appeals's decision to the contrary must be considered an unreasonable application of Biggers and the other Supreme Court precedents bearing on this issue. As such, and because the reasonableness of the Indiana Court of Appeals's decision on Cossel's ineffective assistance of counsel claim depends on its Biggers analysis, we conclude that the decision by the Indiana Court of Appeals to reject Cossel's ineffective

assistance of counsel claim was an unreasonable application of clearly established federal law. Accordingly, Cossel has satisfied the requirements for habeas corpus relief under 28 U.S.C. sec. 2254(d)(1).

IV

For the foregoing reasons, the judgment of the district court is Reversed and the case is Remanded to the district court with instructions to grant Cossel a writ of habeas corpus unless the state retries him within 120 days.

/1 The state post-conviction trial court and the Indiana Appellate Court assert that this photo array took place in July 1984. Cossel states that it took place in July 1985, and K.D., in her testimony at trial, also stated that it took place in July 1985. When questioned at trial, Officer Davis testified that he had no recollection of the photo array or when it might have taken place.

/2 The state also elicited testimony from two other sexual assault victims who claimed that Cossel was the person who had attacked them (charges in both cases had been dropped). Both were allowed to testify, over counsel's objection, to the details of their sexual assaults. An Indiana rule allowed their testimony to be admitted against Cossel on the theory that it showed Cossel had a "depraved sexual instinct." In 1992, the Indiana Supreme Court rejected this rule on the ground that it allowed overly-prejudicial evidence to be admitted, and in its stead adopted Fed. R. Evid. 404(b). Lannan v. State, 600 N.E.2d 1334, 1338-39 (Ind. 1992).

/3 Moreover, when the state initially briefed this appeal, in response to Cossel's pro se brief, the state argued only that his claim failed on the merits; it made no mention of procedural default. The state (represented by the same lawyer who wrote the initial appellate brief) did not assert that Cossel had procedurally defaulted his claim until this court appointed counsel for Cossel, ordered the parties to rebrief the appeal, and set the case for oral argument.

/4 The fourth Biggers factor--the level of certainty demonstrated by the witness at the time of the identification--has little relevance here, where the level of certainty a witness demonstrates is just as likely to be a product of a prior unduly suggestive identification as it is to be a product of an independent recollection of the crime. See Rodriguez, 906 F.2d at 1163 (expressing skepticism about the significance of witness certainty in such a situation). Thus,

although K.D. demonstrated no uncertainty at trial in identifying Cossel as her attacker, that fact must be considered in light of the suggestive identifications she participated in prior to trial, as well as the level of uncertainty she expressed at those identifications. For these reasons, the fourth Biggers factor does not lend support to any particular conclusion regarding the independence of K.D.'s in-court identification.