# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 02-3578 & 03-1870

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THEODORE D. ROGERS and WINFRED OWENS,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 01 CR 96—**James T. Moody**, *Judge.*

_____

ARGUED MARCH 2, 2004—DECIDED NOVEMBER 5, 2004

_____

Before CUDAHY, RIPPLE and WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Pursuant to a plea agreement, Theodore Rogers pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The plea agreement required him to testify at the trial of Winfred Owens. He later filed a motion to withdraw his guilty plea; the district court denied the motion. He now appeals that decision.

Mr. Rogers did testify at Mr. Owens' trial, and based in part on his testimony, Winfred Owens was convicted of

multiple drug trafficking offenses in violation of 21 U.S.C. §§ 841(a)(1) and 843(b), and of 18 U.S.C. § 1952. He appeals his conviction.

For the reasons set forth in the following opinion, we affirm the district court's denial of Mr. Rogers' motion to withdraw his plea, and we reverse the judgment of the district court with respect to Mr. Owens' conviction and remand the case for further proceedings.

# I

## BACKGROUND

### A. Facts

On the evening of December 2, 2000, Rogers, a crack cocaine addict living in Kentucky, agreed to accompany his supplier, James Moorman, on a trip to Merillville, Indiana. Rogers received some cocaine from Moorman for agreeing to make the trip. Rogers used the cocaine that night, and the pair set out for Merillville on the morning of December 3, 2000. During the trip, Moorman made numerous calls on his cellular telephone. The two arrived at their destination, the Burger King parking lot in a Merrillville mall, later in the afternoon.

When the pair pulled into the parking lot, Moorman was on the telephone, and Rogers noticed an African-American male in the same lot, also talking on his cellular telephone. After they parked, Rogers exited the vehicle, and the other man took his place. Moorman and the man then drove away; Rogers ate at the Burger King and looked at some clothing in the mall. After about twenty-five minutes, Rogers returned to the parking lot in time to see Moorman return with the same African-American male. This passenger exited Moorman's vehicle, entered another waiting car, and drove away.

Rogers and Moorman switched places for the return trip, with Rogers driving. About thirty-five minutes later, as they traveled south on Interstate 65, Trooper Jason Carmin of the Indiana State Police observed Rogers' vehicle weave in its lane, cross by one to two feet the white ("fog") line separating the travel lane from the shoulder and then make an abrupt move to return to the correct side of the line. The trooper stopped the car and, as he approached it, noticed an odd, unidentifiable odor coming from the interior of the vehicle. When he asked for Rogers' license and registration, Trooper Carmin became more suspicious because Rogers and Moorman seemed nervous and avoided eye contact with him. Trooper Carmin also learned by radio that Rogers had several charges for possession of and trafficking in controlled substances. The trooper therefore summoned assistance and a drug-sniffing canine unit.

The dog alerted to the presence of drugs in the car, and its handler, Officer Myron Retske, let the dog inside the car. The officer eventually isolated the source of the scent—the vehicle's glove compartment—where he found a brick of cocaine wrapped in plastic and in a week-old Gary, Indiana newspaper. As Officer Retske searched the passenger compartment, other officers discovered two wads of currency, totaling approximately $2000 hidden in a spare tire in the trunk. A search of Moorman yielded an additional $660 from his front shirt pocket. Based on their discoveries, the police arrested Rogers and Moorman and impounded the vehicle.

On December 7, 2000, the police continued their search of the car, and discovered a cellular telephone registered to Moorman. In the phone's internal directory, the officers noticed two numbers with northwestern Indiana's "219" area code and a three-digit prefix for the city of Gary. One number had been programmed with the letters "W I N"

identifying the owner. This number was registered to Crystal Bryant, who had purchased the cellular telephone associated with it for Owens; Owens had been in possession of this phone for approximately one year, from the fall of 2000 to the fall of 2001. Telephone records from Owens' phone indicated two calls to Moorman on December 2, and eight calls on December 3. Police subsequently found Owens' fingerprint on the Gary newspaper wrapped around the seized brick of cocaine, along with Moorman's fingerprint and several unidentified prints.

After his arraignment, Rogers moved to suppress evidence seized from the car. He asserted that the stop and search violated his rights under the Fourth Amendment to the Constitution of the United States. Before this motion was heard, however, Rogers decided to cooperate with the Government. In September or October of 2001, almost ten months after his arrest, he was shown some photographs and asked if any of them depicted the man who he had seen in the parking lot with Moorman.[1] Rogers could not identify any photograph, but he gave a description of the man, along with a statement, and, on October 2, 2001, he petitioned the court to change his plea to guilty of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), in exchange for his cooperation. The district court scheduled a hearing for October 26, 2001, to determine whether to accept the guilty plea.

---

[1] The record does not reflect how many photographs were shown to Rogers, nor the form that the photographic display took. The record also does not specify that the array contained a photograph of Mr. Owens, although this fact is implicit in the parties' agreement that Mr. Rogers could not identify Mr. Owens' picture in the lineup.

During the week preceding this hearing, FBI Special Agent Anthony Riedlinger had attempted to arrest Owens with the help of Owens' probation officer, Louis Fuentes, but had to wait until Owens returned from a cruise. Officer Fuentes, employing a ruse, convinced Owens to report to him in person. Officer Fuentes then notified Agent Riedlinger, who arrested Owens when he reported on October 26, 2001. Agent Riedlinger found Owens in possession of a key chain inscribed with the letters "W I N"—the letters programmed in Moorman's telephone.[2] Owens was taken to a cell in the same federal courthouse where Rogers' plea hearing was scheduled for that day.

At his plea hearing, Rogers testified to the facts above.[3] The district court accepted his guilty plea, and marshals then returned him to the holding cell.[4] According to Agent Riedlinger, he told the marshals to ensure that Rogers and Owens were separated; nevertheless, Rogers found himself in the cell with Owens.

Rogers claims that, upon entering the cell, he recognized Owens as the man from the Merrillville parking lot. While

---

[2]  At his trial, the Government associated the nickname "Win" with Winfred Owens.

[3]  Rogers did not mention the other man in the parking lot in his plea colloquy, and the only reference to this man was the Government's description of him as a known area drug dealer.

[4]  Owens arrived at the courthouse before or during Rogers' plea hearing. Agent Riedlinger testified that he went to the cell to process Owens, and then went upstairs to watch Rogers' hearing. At the time Agent Riedlinger processed Owens, Rogers was not in the same cell. It is not clear from the record whether, after the hearing, Rogers was moved to a cell other than the one he had occupied previously, or whether Owens was placed in the vacated cell after Rogers went upstairs for his hearing.

the two occupied the cell, a probation officer entered and interviewed Rogers to begin his presentence investigation. At some point, Agent Riedlinger arrived to talk with Rogers, saw the two men together in the cell, and immediately told the marshals to separate them.

## B.  District Court Proceedings

In March 2002, Rogers moved to vacate his guilty plea. He contended that he did not have time or adequate counsel to make a voluntary decision to plead guilty and that he never received a hearing on his suppression motion. The Government countered that his unconditional guilty plea constituted a waiver of his Fourth Amendment claim, which mooted the suppression motion. The district court nevertheless held an evidentiary hearing, during which Rogers' counsel questioned Trooper Carmin and Officer Retske about the vehicle stop. The district court noted that both the evidence of record and Rogers' statements during the plea hearing indicated that he had adequate access to counsel. Accordingly, the court rejected the voluntariness challenge. The district court further determined his Fourth Amendment challenge to be baseless. Concluding that Rogers did not demonstrate a fair and just reason to change his plea, the district court denied his motion.

Owens was tried the same month. The Government introduced evidence of the facts we have just described, and Rogers testified against Owens. In his testimony, Rogers identified Owens as the man he had seen in the Merrillville parking lot and who drove away with Moorman. On cross examination, Rogers admitted that he remembered Owens better because he had spent time with him in the same cell on October 26. Asked to describe the man he saw on

December 3, 2000, Rogers replied only that the man was "a black guy" and that to him "most black guys look alike."[5] Tr.VI at 161-62.

Owens unsuccessfully objected to the in-court identification, contending that his placement in the cell with Rogers on October 26 was unduly suggestive. He also unsuccessfully moved for judgment of acquittal. At the end of the two-day bench trial, the court found Owens guilty on all counts. Owens then filed a post-trial motion for acquittal or for a new trial, again attacking Rogers' identification and the sufficiency of the evidence. The district court denied this motion. It determined that the identification procedures were reliable even if Rogers' placement in the same cell had been unduly suggestive. Rogers and Owens were sentenced to 51 and 97 months' imprisonment, respectively.

## II

## DISCUSSION

### A. Standard of Review

This court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Roque-Espinoza*, 338 F.3d 724, 726 (7th Cir. 2003). We review the district court's factual findings for clear error. *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003). On Mr. Owens' challenge to the sufficiency of the evidence, we shall affirm his conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). In making this evaluation, we must draw all reasonable infer-

---

[5]  Mr. Rogers and Mr. Owens are both African-American.

ences in favor of the Government without reweighing the evidence or witness credibility. *United States v. Senffner*, 280 F.3d 755, 760 (7th Cir. 2002). We review de novo the refusal to suppress Mr. Rogers' identification of Mr. Owens, with due deference given to the district court's findings of fact. *United States v. Harris*, 281 F.3d 667, 669-70 (7th Cir. 2002).

### B.  Theodore Rogers

A defendant may be allowed to withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B);[6] *see Bennett*, 332 F.3d at 1099. Mr. Rogers bears the burden of demonstrating a fair and just reason. *Bennett*, 332 F.3d at 1099.

Mr. Rogers submits that the district court abused its discretion in denying his motion to withdraw his plea. In his view, he could have demonstrated a likelihood of success on his suppression motion—had he been allowed to argue it. Therefore, he contends, the district court's refusal to hear the suppression motion constituted a fair and just reason to change his plea. Although he predicated his withdrawal motion before the district court on both inadequacy of counsel and unconstitutionality of the stop and search, his submissions before this court claim only the latter ground.

At his plea hearing, Mr. Rogers did not ask to enter a conditional plea, and therefore did not preserve his right to seek appellate review of the stop and search. Fed. R. Crim.

---

[6]  Amendments to the Federal Rules of Criminal Procedure took effect on December 1, 2002. At the time of his plea hearing, the plea withdrawal provisions of the Rules were located at Rule 32(e); the fair and just reason standard remains the same. *See United States v. Bennett*, 332 F.3d 1094, 1099 n.1 (7th Cir. 2003).

P. 11(a)(2). His guilty plea operates as a waiver of all non-jurisdictional defects. *See United States v. Galbraith*, 200 F.3d 1006, 1010 (7th Cir. 2000). "In order to preserve an issue for appeal, the plea must precisely identify the pretrial issues which the defendant wishes to preserve for review, and must demonstrate that a decision on one of those issues will dispose of the case . . . by suppressing essential evidence." *United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 1998).

We can find no statements in the record of the plea hearing that indicate Mr. Rogers' plea of guilty was anything but unconditional. Notably, the record indicates that he recognized the impact of his plea because his agreement to waive the right to appeal any sentence sparked extensive discussion with the district court.[7] Mr. Rogers thus waived consideration of his Fourth Amendment claim.

Despite this waiver, the district court nevertheless held an evidentiary hearing and allowed Mr. Rogers the opportunity to establish a fair and just reason to change his plea by demonstrating that police had conducted the stop and search in violation of his Fourth Amendment rights. After hearing testimony from Trooper Carmin and Officer Retske,

---

[7] During the plea hearing, the district court expressed some concern about his giving up his right to appeal the sentence, and Mr. Rogers did not seem to understand exactly what he was giving up. After the court tried to explain it to him, Mr. Rogers stated that he did not want to give up this right. The court then recessed while Mr. Rogers conferred with his attorney, and when they came back, he agreed that he intended to give up the possibility of appealing his sentence. This exchange indicates that Mr. Rogers was aware of and concerned with the idea of preserving issues for appellate review and undermines to some extent the claim that he did not realize that his suppression motion would be waived.

the court found their testimony credible and determined that the traffic violation and odor from the car had given Trooper Carmin reasonable suspicion to detain Mr. Rogers and to call a canine unit. From the same evidence, the district court further determined that Mr. Rogers had consented to a search of the car. The court finally held that Mr. Rogers had provided little, if any, support for the motion to suppress and therefore had not demonstrated a fair and just reason to withdraw his plea. We can find no clear error in the district court's factual determinations, and we cannot say that the district court abused its discretion in denying Mr. Rogers' motion.

Mr. Rogers' submission to this court might be construed as an invitation to revisit the merits of his claim that the vehicle search violated his constitutional rights. We simply cannot accept such an invitation. At the time of his plea, Federal Rule of Criminal Procedure 11(a)(2) provided that "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea." Fed. R. Crim. P. 11(a)(2) (1999). Consistent with the views of our sister circuits, we have held that a defendant's failure to preserve a pre-trial motion for review under Rule 11(a)(2) constitutes a waiver of the issue. *See, e.g.*, *Galbraith*, 200 F.3d at 1010; *see also, e.g.*, *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003); *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003); *United States v. Lampazianie*, 251 F.3d 519, 526 (5th Cir. 2001).

Mr. Rogers' situation differs from that of other instances of waiver by a failure to preserve through Rule 11(a)(2); he does not seek to appeal an adverse ruling on his suppression motion but asserts that he may withdraw his plea because the district court never considered the suppression

motion. His unconditional guilty plea, however, waived his right to have this court review his Fourth Amendment claim:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Notably, Mr. Rogers does not assert here that he was coerced into pleading guilty; he does not attempt to show that his plea was involuntary; and he does not suggest any misapprehension on his part that his suppression motion would survive the plea. *See United States v. Muniz*, 882 F.2d 242, 243-44 (7th Cir. 1989). Although this court has relaxed the Rule 11(a)(2) requirement that a condition be in writing, *see United States v. Yasak*, 884 F.2d 996, 1000 (7th Cir. 1989), we find no statements from Mr. Rogers in his change of plea hearing or otherwise that his intent to plead guilty depended on the outcome of his suppression motion, or that his plea was conditioned on the preservation of his suppression motion.[8] Because Mr. Rogers' asserted constitutional viola-

---

[8] The Sixth Circuit considered and rejected the argument that, when—as here—a defendant explicitly agrees to waive appeal of his sentence, the maxim *expressio unius est exclusio alterius* could lead us to construe this express waiver as an implicit preservation of every other issue. *See United States v. Bell*, 350 F.3d 534, 536 n.2

(continued...)

tion is non-jurisdictional, he "waived his right to appeal the suppression issue by entering this unconditional plea, [and] we will not review his Fourth Amendment claims." *Galbraith*, 200 F.3d at 1010.

In its response to Mr. Rogers' change of plea motion, the Government argued in the district court that Mr. Rogers waived his right to consideration of the Fourth Amendment claim. The district court nevertheless chose to conduct an evidentiary hearing to determine whether Mr. Rogers could establish, through the asserted Fourth Amendment violation, a fair and just reason to change his plea. *See United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993). The Government does not present its waiver argument here, but limits its brief to the district court's fair and just determination based on the search issue. We have nevertheless held that a defendant's failure to preserve a constitutional claim for appeal through a Rule 11(a)(2) conditional plea deprives this court of authority to hear the claim. *United States v. Adams*, 125 F.3d 586, 588-89 (7th Cir. 1997). This view is consistent with the holdings of some of our sister circuits, and seems consistent with the Supreme Court's view in *Tollett*. *See, e.g.*, *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001) ("It is elemental that a guilty pleading defendant *may not* appeal an adverse pre-plea ruling . . . ." (emphasis added) (citing *Tollett*, 411 U.S. at 267)); *United States v. Arrellano*, 213 F.3d 427, 430 (8th Cir. 2000) (noting "well established" rule that a defendant pleading guilty waives non-jurisdictional defenses); *United States v. Cordero*, 42 F.3d 697, 699 (1st Cir. 1994) ("We have assiduously fol-

---

[8]  (...continued)
(6th Cir. 2003). We agree with our sister circuit, however, that "Rule 11(a)(2) mandates that [the] defendant not get the benefit of such silence." *Id.*

lowed the letter and spirit of *Tollett*, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point . . . ."); *United States v. Pickett*, 941 F.2d 411, 415 (6th Cir. 1991) (Rule 11(a)(2) "*prevents* our hearing [the defendant's] appeal." (emphasis added)); *United States v. Carrasco*, 786 F.2d 1452, 1453-54 (9th Cir. 1986) ("We do not have jurisdiction to decide Carrasco's appeal of the denial of the suppression motion unless she entered a valid conditional plea."). *But see United States v. Robinson*, 20 F.3d 270, 273 (7th Cir. 1994); *Garcia*, 339 F.3d at 118; *cf. United States v. Davis*, 900 F.2d 1524, 1526 (10th Cir. 1990) (noting that the court "need not" entertain appeal of an unpreserved pre-trial motion).[9]

---

[9] We note that, even if we were to reach the point, we would find the Fourth Amendment issue without merit. Trooper Carmin testified that he observed Mr. Rogers' vehicle cross the fog line before making an abrupt correction. This erratic behavior gave the trooper probable cause to believe that Mr. Rogers had committed a traffic violation. We have no reason to suspect that Trooper Carmin had an ulterior motive in stopping Mr. Rogers, but, even if we did, his subjective motive for making the stop is not relevant; the only relevant inquiry for Fourth Amendment purposes is whether the evidence, when objectively assessed, gave the officer probable cause for the stop. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003). Although Mr. Rogers asserts that the stop was pretextual, the evidence establishes both that Trooper Carmin had probable cause to stop the car, and that he was authorized to make the stop. *See generally United States v. Trigg*, 878 F.2d 1037 (7th Cir. 1998).

We further agree with the district court's determination that, based on Mr. Rogers' nervous behavior, the odd odor emanating

(continued...)

Accordingly, we find no error in the district court's denial of Mr. Rogers' motion to withdraw his guilty plea, and we affirm Mr. Rogers' conviction.

## C. Winfred Owens

Mr. Owens appeals his conviction on two grounds, both for sufficiency of the evidence and trial court error. Specifi-

---

[9] (...continued)
from the vehicle, and his prior drug history, Trooper Carmin had reasonable suspicion to believe that the vehicle's occupants were engaged in drug activity and to justify calling a canine unit. *See United States v. Finke*, 85 F.3d 1275, 1281-82 (7th Cir. 1996). Although, given the traffic violation and the occupants' suspicious behavior, the officers may have had sufficient probable cause to place Mr. Rogers under arrest and search the vehicle incident to that arrest, *see New York v. Belton*, 453 U.S. 454, 460-61 (1981); *Chimel v. California*, 395 U.S. 752, 760 (1969); *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003); *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003), we need not address that question because the evidence supports the district court's determination that, based on the officers' testimony, the vehicle occupants consented to the search, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. West*, 321 F.3d 649, 651-52 (7th Cir. 2003). In the alternative, we agree with the district court's determination that once the canine alerted to the presence of drugs in the vehicle the officers' reasonable suspicion elevated to probable cause to further search the car. *See United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003).

Thus, although his unconditional plea waived consideration of his Fourth Amendment claim, we, like the district court, see no merit to Mr. Rogers' suppression motion. We therefore find no abuse of discretion in the district court's determination that the asserted Fourth Amendment violation did not constitute a fair and just reason for changing the plea.

cally, he claims that the evidence presented was insufficient to convict him of the charged crimes. He also asserts that the district court erred in refusing to suppress Mr. Rogers' identification because the placement of the two in the same cell was unduly suggestive and inherently unreliable.

A finding of insufficient evidence is akin to an acquittal and bars the defendant's retrial under the Double Jeopardy Clause. *Burks v. United States*, 437 U.S. 1, 18 (1978); *see generally United States v. Lanzotti*, 90 F.3d 1217, 1220-24 (7th Cir. 1996). Improper admission of evidence, on the other hand, is "trial error," the double jeopardy bar does not attach, and a retrial may be had on remand. *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988); *United States v. Hudspeth*, 42 F.3d 1015, 1025 (7th Cir. 1994) (en banc).

### 1. Sufficiency of the Evidence

Mr. Owens argues that the Government offered evidence insufficient to support his convictions. To prove that he possessed with intent to distribute 500 or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1), the Government was required to establish that (1) he possessed more than 500 grams of cocaine; (2) he knew the drug was a controlled substance; and (3) he intended to distribute it. *See United States v. Jones*, 248 F.3d 671, 675 (7th Cir. 2001). To prove a violation of 21 U.S.C. § 843(b), the Government had to demonstrate that Mr. Owens used a communication device in furtherance of the § 841(a)(1) offense. *See United States v. Binkley*, 903 F.2d 1130, 1136 (7th Cir. 1990). To meet its burden on the alleged violations of 18 U.S.C. §§ 2 and 1952, the Government had to show that Mr. Owens knowingly aided and abetted another person's interstate travel with the intent of promoting the § 841(a)(1) offense. *See United States v. O'Hara*, 301 F.3d 563, 570 (7th Cir. 2002).

There was ample circumstantial evidence of record to convict Mr. Owens on all three counts. At trial, the Government introduced evidence that Moorman and Mr. Rogers traveled from Kentucky to Merrillville for the apparent sole purpose of buying cocaine. After arriving, Moorman and another man drove away for twenty to twenty-five minutes before returning to the parking lot. Mr. Rogers identified Mr. Owens as that man, and Mr. Owens' fingerprint was found on the newspaper covering a one-kilogram brick of cocaine in Moorman's glove box. Police found a large quantity of currency on Moorman's person and even more money hidden in the vehicle. Mr. Rogers testified that Moorman made several telephone calls to the man during their trip, and noticed the man in the parking lot on a telephone at the same time Moorman talked on his. Telephone records indicated eight calls placed that day between Moorman's cellular telephone and a cellular telephone in Mr. Owens' possession. In his phone directory, Moorman had programmed the letters "W I N" next to the number associated with the telephone in Mr. Owens' possession, and these same letters were inscribed on a keychain in Mr. Owens' possession at his arrest.

Before this court, Mr. Owens points to the evidence that was *not* presented. He notes that the fingerprint evidence is inconclusive because it does not rule out the possibility that he read the newspaper and discarded it, only to be picked up and used to wrap cocaine. Along the same lines, he argues that evidence did not rule out the possibility that another person used his cellular telephone that day. He also asserts that no trial witness saw him with the cocaine or testified about the substance of any telephone calls. Mr. Owens made these arguments at his bench trial, and the district court nevertheless found them unconvincing.

Drawing all reasonable inferences in the Government's favor, as we must, *see Senffner*, 280 F.3d at 760, we believe that a rational trier of fact could have inferred that Moorman and Mr. Rogers traveled to Merrillville at least partly with the aid or encouragement of Mr. Owens. The same rational factfinder could have determined that Mr. Owens intended to, and did, transfer over 500 grams of cocaine to Moorman, and that the participants facilitated the transaction by using telephones. The evidence was thus sufficient to convict Mr. Owens of all three counts.

### 2. Identification

A criminal defendant has a due process right not to be identified before trial "in a manner that is 'unnecessarily suggestive and conducive to irreparable mistaken identification.' " *Cossel v. Miller*, 229 F.3d 649, 655 (7th Cir. 2000) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). We conduct a two-step analysis to determine whether an identification procedure comports with due process. *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003). First, Mr. Owens "must demonstrate that the identification procedures were unduly suggestive." *Id.* (citing *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002)). Second, "we ask whether, under the totality of the circumstances, the identification was reliable despite the suggestive procedures." *Traeger*, 289 F.3d at 474.

In this case, the district court allowed, over Mr. Owens' objection, Mr. Rogers to identify Mr. Owens in court. That identification is tainted, according to Mr. Owens, because placing him alone in the same cell with Mr. Rogers, when the latter previously had been unable to identify him from a photo lineup, was unduly suggestive. In this vein, he likens the situation to a "showup," in which only one suspect,

rather than a lineup, is presented to a witness. *See Armstrong v. Young*, 34 F.3d 421, 427 (7th Cir. 1994). The district court denied Mr. Owens' post-conviction motion for acquittal but nevertheless characterized the identification as "less than ideal." R.88 at 9. It assumed that the situation in the holding cell "could be construed as a suggestive pre-trial identification." R.88 at 10. The court nevertheless found the in-court identification reliable. Mr. Owens claims that this determination was erroneous, and that, under the totality of the circumstances, the in-court identification was unreliable.

The Government contends that the placement of Mr. Rogers in a cell with Mr. Owens represented a simple chance encounter between the two and was not unduly suggestive because law enforcement authorities did not present Mr. Owens to Mr. Rogers. Assuming that the encounter was unduly suggestive, however, the Government further argues that the in-court identification of Mr. Owens was sufficiently and independently reliable under the totality of the circumstances.

### a. suggestiveness

We agree with the district court that Mr. Rogers' identification of Mr. Owens was "less than ideal."[10] There is no evidence that the Government intentionally placed Mr. Rogers in the cell to identify Mr. Owens; the lapse in appropriate procedures appears to have been inadvertent. The

---

[10] Mr. Owens does not claim the picture lineup shown to Mr. Rogers in September or October 2001 to be unduly suggestive, and the record is insufficient to determine whether it was so. We therefore consider only how Mr. Rogers' viewing of the photographs affected his identification after the two were placed in the same cell on October 26.

agents did not present him to the witness for identification. The Government, however, goes too far in characterizing the events of October 26 as a chance encounter.

To be sure, courts have held accidental encounters between a witness and a suspect to be non-suggestive. *See, e.g.,* *United States v. Briggs*, 700 F.2d 408, 411-13 (7th Cir. 1983) (witness recognized defendant after seeing him in courthouse hallway); *see also United States v. Lopez-Lopez*, 282 F.3d 1, 11 (1st Cir. 2002) (narcotics agents had unsuccessfully pursued defendants and spontaneously recognized the defendants upon entering police station and seeing them in custody); *United States v. Domina*, 784 F.2d 1361, 1369-70 (9th Cir. 1986) (witness waiting to testify recognized defendant in group of people exiting courtroom during recess); *United States v. Hensel*, 699 F.2d 18, 40 (1st Cir. 1983) (witness waiting to testify spontaneously recognized defendant at courthouse snack bar).

The facts before us indicate that the meeting between Mr. Rogers and Mr. Owens was more than an accidental encounter in a hallway or a snack bar. Both men were in the cell because of their complicity in the same criminal transaction. A probation officer interviewed Mr. Rogers, in preparation for sentencing on that offense, while Mr. Owens sat close by. Mr. Rogers had been shown a picture of Mr. Owens in the photo array a few weeks earlier at most, and he may well have determined—if only subconsciously—that finding the same man in his cell on the day he pleaded guilty was no coincidence. Mr. Rogers' failure to recognize Mr. Owens from the photo array casts suspicion on his "immediate" recognition in the holding cell.

It is irrelevant that police unintentionally placed the two men in one cell. *Manson v. Brathwaite*, 432 U.S. 98, 112-14 (1977). The circumstances were, as the district court assumed, unduly suggestive. Mr. Owens has met his burden of demonstrating the first element of the two-part inquiry.

### b.  reliability of the in-court identification

Having determined the identification procedure to be unduly suggestive, we must consider whether, under the totality of the circumstances, Mr. Rogers' in-court identification was reliable despite his having been placed in a cell with Mr. Owens. In assessing the reliability of an identification despite unduly suggestive pre-trial procedures, we must consider the five so-called "*Biggers* factors": (1) the witness' opportunity to view the suspect at the scene of the crime; (2) the witness' degree of attention at the scene; (3) the accuracy of his pre-identification description of the suspect; (4) the witness' level of certainty in the identification; and (5) the time elapsed between the crime and the identification. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *McFowler v. Jaimet*, 349 F.3d 436, 449 (7th Cir. 2003). Applying these factors to the facts of this case casts very serious doubt on the reliability of this in-court identification.

It is not clear from Mr. Rogers' testimony how long he observed the other man in the Merrillville parking lot. He saw the man twice within the space of twenty-five minutes, and testified to observing him in the parking lot, entering Moorman's car and driving away, returning, and then leaving in another vehicle. But there is no indication how close the two came to each other or for how long Mr. Rogers observed him. Mr. Rogers' view may have been obstructed at almost every stage: the man held a telephone to his ear in the parking lot at first, and was then observed in a vehicle.

As for the second *Biggers* factor, the record raises doubts about the amount of attention Mr. Rogers gave to events in that parking lot. On one hand, Mr. Rogers was a knowing participant in a criminal transaction and may have been particularly attentive as a result. *See United States v. Plunk*, 153 F.3d 1011, 1021-22 (9th Cir. 1998), *abrogated on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir.

2000). He also had used cocaine seven to eight hours before arriving in the parking lot, but we defer to the district court's factual determination that he was free from the drug's influence at the time. *See Harris*, 281 F.3d at 669-70. However, Mr. Rogers played a limited role in the transaction—he only accompanied Moorman in exchange for the cocaine. He appears to have been uninterested in Moorman's scheme; Mr. Rogers exited the vehicle once they arrived at the parking lot, allowed Moorman and the other man to drive away, spent his time eating and looking at clothes until they returned, and then immediately began driving back to Kentucky. There is no evidence that Mr. Rogers ever spoke to the other man or that he even asked Moorman about the transaction. Moreover, Mr. Rogers' statement that "most black guys look alike" to him casts doubt on any attention that he paid to the man in the parking lot.

The record is silent as to the quality or content of any description Mr. Rogers gave of the other man. Again, though, his admitted inability to distinguish African-Americans would give us pause in considering his description. Perhaps instructively, at trial the best description Mr. Rogers could give of himself was "a black guy and I got a little bit of hair." Tr.VI at 162.

Mr. Rogers expressed no uncertainty about identifying Mr. Owens in court. We give this factor little weight in the present circumstances, however, because the presence at a criminal trial of a single defendant like Mr. Owens can be suggestive, *see McFowler*, 349 F.3d at 450, and it is not surprising that Mr. Rogers would express certainty with respect to his in-court identification. Indeed, "the most certain witnesses are not invariably the most reliable ones." *Rodriguez v. Young*, 906 F.2d 1153, 1163 (7th Cir. 1990). It is telling that when asked to describe the individual who drove the man identified as Mr. Owens away from the parking lot, Mr.

Rogers' certainty faltered, and the most he could manage was in response to prodding from Mr. Owens' counsel:

> Q: So, the other person in that car was a male, not a female?
>
> A: It was a back [sic]—yeah, black male.

Tr.VI at 162. In addition, here, where Mr. Rogers' certainty is a product of the suggestive earlier identification in the cell, we are particularly skeptical. *See Cossel*, 229 F.3d at 656 n.4. Moreover, as certain as Mr. Rogers may have been in the identification at trial, his failure to identify Mr. Owens' photograph before the suggestive encounter makes his actual degree of certainty doubtful.

Finally, consideration of the fifth *Biggers* factor reveals that a significant amount of time elapsed between the parking lot transaction and his identification of Mr. Owens. Mr. Rogers did not recognize Mr. Owens until, as a cooperating witness, he walked into the holding cell on October 26, 2001, almost eleven months after seeing the man in the parking lot and weeks after failing to identify Mr. Owens' photograph. *See Cossel*, 229 F.3d at 656 (seven months between encounter and identification would "be a seriously negative factor" (quoting *Biggers*, 409 U.S. at 201)). He did not identify Mr. Owens in court for a further five months.

We conclude that Mr. Rogers' identification was unduly suggestive and, under the totality of the circumstances, unreliable, and it should have been excluded. At oral argument the Government conceded that if we found the identification to be inadmissible its admission would not be considered harmless. We agree that the error was not harmless, and therefore reverse Mr. Owens' convictions. Because we reverse based on trial error, we remand to the district court for further proceedings consistent with this opinion.

## Conclusion

For the foregoing reasons, we affirm the district court's denial of Mr. Rogers' motion to withdraw his guilty plea. With respect to Mr. Owens, we hold that there was sufficient evidence to support his convictions, but we reverse on all three counts because the in-court identification of Mr. Rogers improperly was admitted into evidence. Mr. Owens' case is remanded to the district court for further proceedings.

AFFIRMED in part; REVERSED and REMANDED in part

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*